### QUINN et al. v. TAYLOR.
#### No. 7549.

Court of Civil Appeals of Texas. Austin.
Feb. 18, 1931.

Rehearing Denied March 4, 1931.

Dibrell & Starnes, of Coleman, for appellants.

Butts & Wright, of Cisco, and Critz & Woodward, of Coleman, for appellee.

McCLENDON, C. J.

This is the second appeal of this case. For our former opinion, see 12 S.W.(2d) 1097 (error refused).

Appellants urge the same questions presented and decided in the former appeal relating to the statute of frauds as applied to the description of the property and subject-matter in contracts in suit. The assignments in this regard are overruled by reference to our former opinion without further comment.

The following statement will suffice to an understanding of the other questions presented by the present appeal: December 5, 1925, a number of persons owning lands in the northwestern part of McCulloch county executed an escrow agreement in the form of a letter addressed to the Coleman National Bank by which they agreed to place in the bank form 88 oil and gas leases in favor of Barnum, covering some 2,250 acres of land. Barnum was to assemble the leases and was to have thirty days thereafter in which to make a geological survey of the area, and, if favorable, he was to drill a well on some part of the land to a depth of 1,800 feet, unless oil in commercial quantities were found at a lesser depth. The lessors were to furnish abstracts of title as soon as the leases were assembled, and when the geological survey was made and the titles approved Barnum was to deposit in escrow in the bank $1 per acre, which sum was to be returned to Barnum as soon as he actually commenced drilling operations. The several leases were executed and bore different dates all prior to February 1, 1926. When they were in fact delivered to the bank does not appear. In April, 1926, Barnum assigned all the leases to appellee Taylor, who later opened negotiations with appellant Lester, resulting in the two instruments set forth in our former opinion. Under the first of these instruments (dated June 15, 1926), Lester, in consideration of drilling the well and $1,000, was to have his choice of leases covering 1,500 acres in the block. He was given fifteen days in which to make the geological survey, which was done, and on July 7th the agreement was closed by instrument of that date, in which Lester designated 1,520 acres selected by him, and agreed, upon acceptance of title by his attorneys, to pay the $1,000. The instrument further provided that, should any objection be found to the title, "you (Taylor) shall use your best endeavor to have same cured at earliest moment possible." Abstracts of title were furnished and approved, but Lester failed to carry out any portion of

the contract. There was considerable correspondence by wire and letter between Lester and Taylor in regard to the matter, and a number of verbal conferences as to which latter the evidence of the different witnesses was not in accord. However, it conclusively appears that the titles were accepted, and no objection was made in that regard until after suit was filed.

Suit was brought by Taylor against Lester and Ehorn and Quinn, under the allegation that they were all partners in the transaction. This allegation was denied under oath and found against plaintiff; manifestly upon the testimony of the three defendants that there was no partnership or joint ownership in the venture, but that, on account of a lawsuit in which valuable properties belonging to the three defendants were tied up, Ehorn and Quinn in an adjustment agreement made in January, 1927, each assumed one-third of any liability incurred by Lester in the transaction here in suit.

The jury findings upon the only two facts issues submitted to them were: (1) That there was no partnership between the defendants in the transaction sued upon; and (2) that the contract between Taylor and Lester was not for the joint benefit of the latter and Ehorn and Quinn. Upon this verdict the court rendered judgment in favor of Taylor against Lester for $1,000, and against Ehorn and Quinn for $333.33 each, the latter when paid to operate as a credit pro tanto on the judgment against Taylor; and in favor of Taylor over against Ehorn and Quinn to the extent of $333.33 each for any payment made by him on the $1,000 judgment above $333.33. Separate appeals have been prosecuted by Taylor and by Ehorn and Quinn.

■■ Ehorn and Quinn contend that the burden was upon Taylor to show as a condition precedent to recovering the $1,000 that the leases he held were valid; and, further, that, since it appeared from the Barnum escrow agreement that the thirty-day period in which the geological survey was to be made had elapsed prior to negotiations between Taylor and Lester, there was an affirmative showing that Lester was not in a position to carry out his contract. We overrule this contention. The record conclusively shows that Taylor's title to the leases was approved by Lester. If impossibility to comply with his contract was a valid defense to this suit, it was incumbent upon Lester to allege and prove that fact. The agreement of July 7, 1926, obligated Taylor in case objections were pointed out in the title to use his best endeavor to have them cured at the earliest moment possible. Since Lester accepted the title, in order to defeat Taylor's claim that he had complied with his contract, it would have been necessary for Lester to allege and prove both that there were defects in the title, and that Taylor could not have cured them. No proof upon this subject was offered further than as might appear from the face of the Barnum escrow agreement.

■ It is the contention of Taylor in his appeal that he was entitled to an additional judgment for $8,000 as damages for failure to drill the well, the uncontradicted evidence showing that the balance of the leases owned by him and covering some 700 acres would have been worth at least $12.50 per acre, as soon as drilling operations were commenced, and that it would have cost at least $8,000 to drill the well; his recovery being the same under either measure of damages. We overrule this contention upon the ground that Taylor failed to show any damage, in that he failed to show his ownership of valid leases. Taylor's only interest in the drilling of the oil well was in its effect upon the other leases he held in the block. Lester had no interest in these leases, and there was no admission by him of title in Taylor in so far as they were concerned. The burden rested upon Taylor to show all elements essential to his right of action for damages, and one of these elements consisted in his ownership of valid leases which would be affected by failure to drill the well. Taylor did not meet this burden.

■ The only other question raised by the appeals is the contention of Ehorn and Quinn that there was no direct liability on their part to Taylor. We overrule this contention on the authority of Southern Surety Co. v. Solomon (Tex. Civ. App.) 4 S.W.(2d) 599, and cases there cited.

The trial court's judgment is affirmed.

Affirmed.